# EXHIBIT B

Filed 10 July 29 P1:57
Loren Jackson - District Clerk
Harris County
ED101J015887209
By: Sharon Carlton

**2010-46969 / Court: 125**

CAUSE NO. _____

| | | |
|---|---|---|
| ILENE PUZIO-MALDONADO | § | IN THE DISTRICT COURT OF |
| | § | |
| V. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ZIMMER, INC., a Delaware corporation; | § | |
| ZIMMER HOLDINGS, INC., a Delaware | § | |
| corporation; and ZIMMER US, INC., | § | |
| a Delaware corporation | § | _____ JUDICIAL DISTRICT |

### PLAINTIFF'S ORIGINAL PETITION

COMES NOW ILENE PUZIO-MALDONADO, Plaintiff herein, complaining of Zimmer,

Inc., a Delaware corporation; Zimmer Holdings, Inc., a Delaware corporation; and Zimmer US, Inc.,

a Delaware corporation, Defendants herein, and for cause of action says:

### 1.00 DISCOVERY CONTROL PLAN

**1.01** Plaintiffs intend to conduct discovery in accordance with Level Three set forth

in Texas Rule of Civil Procedure 190.3.

### 2.00 PARTIES

**2.01** Plaintiff Ilene Puzio-Maldonado(hereinafter "Plaintiff") is a citizen and

resident of Lodi, New Jersey.

**2.02** Defendant Zimmer, Inc. is a corporation organized under the laws of the State

of Delaware, doing business in the State of Texas, not registered to do business in Texas, with its

principal place of business in Indiana. Zimmer, Inc. may be served with process by serving the

Secretary of State for forwarding to 345 East Main Street, Warsaw, Indiana 46580.

**2.03** Defendant Zimmer Holdings, Inc. is a corporation organized under the laws

of the State of Delaware, doing business in the State of Texas, not registered to do business in Texas;

-1-

with its principal place of business in Indiana; and may be served with process by serving the Secretary of State for forwarding to 345 East Main Street, Warsaw, Indiana 46580.

2.04      Defendant Zimmer US, Inc. is a corporation organized under the laws of the State of Delaware, doing business in the State of Texas, registered to do business in Texas with its principal place of business in Indiana; and may be served with process by serving its registered agent for service, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company at 211 E 7th Street, Suite 620, Austin, Texas 78701.

2.05      Defendant Zimmer, Inc., Defendant Zimmer Holdings, Inc., and Defendant Zimmer US, Inc. shall hereinafter, jointly and severally, be referred to as "Defendant" or "Zimmer."

3.00   JURISDICTION & VENUE

3.01      The court has jurisdiction over defendants because defendants, at all times relevant to the cause of action, did business in Harris County, Texas. The court has jurisdiction over the controversy because the damages are within the jurisdictional limits of the court.

3.02      Venue is proper in Harris County, Texas pursuant to TEX. CIV. PRAC. & REM. CODE ANN. § 15.002 et seq (Vernon Supp. 1999) because part of the events giving rise to this lawsuit occurred in Harris County.

4.00   STATEMENT OF FACTS APPLICABLE TO ALL COUNTS

4.01      On or about November 7, 2007, Plaintiff underwent a total hip replacement with placement of, among other components, a Durom acetabular cup.

4.02      The Durom acetabular cup was designed, manufactured and marketed by Defendant Zimmer. The Durom cup is a large diameter head cup made of cobalt chromium. The exterior is coated with a porous surface intended to achieve permanent fixation through boney

-2-

growth into this surface. The Durom cup has circumferential equatorial fins intended to hold the cup into place until the boney ingrowth achieves permanent fixation.

    **4.03**        Following this hip replacement, despite following all her surgeon's recommendations, Plaintiff began to experience pain. Her complaints were consistent with a loose acetabular cup.

    **4.04**        To manage her intense pain, Plaintiff has been receiving injections into her left hip and has developed bursitis and inflammation. Plaintiff is meeting with her doctor in September to discuss a revision of her left hip arthroplasty.

    **4.05**        Plaintiff believes that the Durom cup received approval for sale in the United States from the FDA as a 510(k) device rather than under the pre-market approval procedure.

    **4.06**        The design of the Durom cup prevents the cup from seating properly in the socket portion of the hip thereby preventing boney ingrowth from occurring necessary to achieve permanent fixation. The fins further fail to firmly hold the cup in place permitting movement that further impedes formation of boney ingrowth.

    **4.07**        Orthopedic surgeons were instructed that the Durom acetabular cup was appropriate for use in total hip replacements with whatever surgical approach was most familiar and comfortable to orthopedic surgeons being appropriate for its placement.

    **4.08**        In March 2008, Dr. Larry Dorr, a physician upon information and belief that was a consultant with Defendant Zimmer, published a letter to his colleagues explaining the failures he was having with the cup failing to achieve the boney ingrowth necessary for the cup to become permanently fixed.

**4.09**         Thereafter, on May 29, 2008, Defendant Zimmer acknowledged that it was aware of the reports of Dr. Dorr and notified orthopedic surgeons that it was conducting its own investigation.  On or about July 22, 2008, Defendant Zimmer halted sales of the Durom cup. According to Defendant Zimmer, the failures of the Durom cup were occurring due to the manner in which the cups were being placed and sales were being halted to permit Zimmer to create an educational program for surgeons placing the Durom cup.

**4.10**         In some studies, the failure rate of the Durom cup has been found to be between twenty-five percent (25%) and thirty-five percent (35%).

**4.11**         Plaintiff has suffered, and continues to suffer, pain, mental anguish, impairment, disfigurement, lost earnings and has incurred medical expenses and will continue to incur medical expenses as a result of the failure of Plaintiff's Durom cup.

## 5.00    COUNT ONE - STRICT LIABILITY

**5.01**         Plaintiff adopts by reference each and every Paragraph of the Statement of Facts Applicable to All Counts of this Petition as if fully copied and set forth at length herein.

**5.02**         Defendant was engaged in the business of designing, manufacturing and marketing the Durom acetabular cup which was implanted in Plaintiff on or about [date].

**5.03**         The Durom cup implanted in Plaintiff's hip reached Plaintiff without substantial change in the condition in which it was designed, manufactured and sold.

**5.04**         The Durom cup implanted in Plaintiff's hip was defective and unreasonably dangerous in one or more of the particulars set forth below.

**5.05**         *Marketing Defects*. Defendant was under a duty to use reasonable care to give reasonable and adequate warnings of any dangers known to Defendant, or which in the exercise of

-4-

reasonable care Defendant should have known, and which Plaintiff obviously could not discover.

The Durom cup implanted into Plaintiff's hip contained one or more marketing defects, among

others:

    (a)    there was an inherent risk in the intended or reasonably foreseeable use of the Durom cup that it could become loose;

    (b)    Defendant knew or reasonably foresaw (or should have known or reasonably foreseen) the above risk.

    (c)    Defendant failed to warn Plaintiff or his physicians (or to adequately warn Plaintiff or his physicians of the above risk), failed to instruct Plaintiff or his physicians (or failed to adequately instruct Plaintiff or his physicians) how to safely use the Durom cup, or both.

    **5.06**    -    *Design Defects.* The Durom cup implanted into Plaintiff's hip contained one

or more of the following design defects, among others:

    (a)    it was unreasonably dangerous for its intended purpose because it had the propensity to become loose;

    (b)    the Durom cup is defective in that it has a high propensity of poor bone fixation to occur;

    (c)    the Durom cup was marketed in such a way as to mislead consumers regarding its safety and efficacy;

    (d)    the Durom cup was designed with circumferential fins that prevent the cup from seating fully into the acetabulum thereby preventing boney ingrowth from occurring; and

    (e)    the Durom cup was inadequately tested.

    **5.07**    A safer alternative design for the Durom acetabular cup existed that would

have prevented or significantly reduced the risk of Plaintiff's injury without substantially impairing

the product's utility, and that was economically and technologically feasible at the time the Durom

acetabular cup left Defendant's control by the application of existing or reasonably achievable scientific knowledge.

**5.08** The defects in the Durom cup implanted into Plaintiff's hip were a proximate and/or producing cause of Plaintiff's injuries and damages, more particularly set forth below.

## 6.00    COUNT TWO - NEGLIGENCE

**6.01** Plaintiff adopts by reference each and every Paragraph of the Statement of Facts Applicable to All Counts of this Petition as if fully copied and set forth at length herein.

**6.02** Defendant owed Plaintiff a duty of reasonable care. Defendant owed Plaintiff a duty to exercise care to discover dangerous propensities of the Durom cup. Defendant owed Plaintiff a duty to exercise ordinary care in the design, production (manufacture) and sale (marketing) of the Durom cup.

**6.03** Defendant breached the duties it owed to Plaintiff, failed to exercise ordinary care, and was negligent in the following particulars, among others:

(a) designing, manufacturing and marketing an acetabular cup that is defective in that it has a high propensity of poor bone fixation to occur;

(b) failing to warn consumers in general, and Plaintiff or his physicians specifically, of the risk that the Durom acetabular cup could become loose;

(c) failing to adequately warn consumers in general, and Plaintiff or his physicians specifically, of the risk that the Durom acetabular cup could become loose;

(d) failing to instruct consumers in general, and Plaintiff or his physician specifically, of how to safely use the Durom acetabular cup;

(e) As more particularly set forth below, Plaintiff invokes the doctrine of res ipsa loquitur.

-6-

**6.04**        Each and every one of the foregoing acts or omissions, taken singularly or in any combination, proximately caused Plaintiff's injuries and damages, more particularly set forth below.

## 7.00   COUNT THREE - RES IPSA LOQUITUR

**7.01**        Plaintiff adopts by reference each and every Paragraph of the "Statement of Facts Applicable to All Counts," "Count One," and "Count Two" of this Complaint as if fully copied and set forth at length herein.

**7.02**        The character of the incident made the basis of this lawsuit such that it would not ordinarily occur without negligence; and

**7.03**        The Durom acetabular cup was under the management and control of Defendant. Defendant was in control of the hip prostheses at the time that the negligence (inferable from the incident made the basis of this lawsuit) occurred, so that the reasonable probabilities point to the Defendant and support a reasonable inference that Defendant was the negligent party.

**7.04**        Defendant has superior knowledge or means of information to determine the cause of the incident made the basis of this lawsuit.

**7.05**        By reason of the above and foregoing circumstances, among others, the jury is permitted to infer Defendant's negligence.

## 8.00   COUNT FOUR - DECEPTIVE TRADE PRACTICES ACT (DTPA)

**8.01**        Plaintiff adopts by reference each and every Paragraph of the "Statement of Facts Applicable to All Counts," "Count One," "Count Two," and "Count Three" of this Complaint as if fully copied and set forth at length herein.

**8.02**            Plaintiff, or his physicians on his behalf, sought or acquired by purchase the

Durom acetabular cup.

*False, Misleading or Deceptive Act or Practice*

**8.03**            Defendant used or employed one or more of the following deceptive acts or

practices, among others:

         (a)     representing that the Durom acetabular cup had characteristics, ingredients, uses or benefits it did not have in that it was represented to be appropriate for use in a total hip arthroplasty but failed to achieve boney ingrowth/fixation;

         (b)     failing to disclose information, that it had a high likelihood of loosening requiring revision, regarding the Durom acetabular cup which was known at the time of the transaction with the intent to induce consumers in general, and Plaintiff or his physicians specifically, into a transaction, and Plaintiff or his physicians specifically, would not have entered into it if Defendant had disclosed the information.

**8.04**       Plaintiff, or his physicians on his behalf, relied on the above representation,

failure to disclose, or both, to Plaintiff's detriment.

*Breach of Warranty*

**8.05**            Defendant breached one or more of the following express or implied

warranties, among others:

    (a)     the implied warranty of merchantability:

         (1)     Defendant sold the Durom acetabular cup to Plaintiff, or to his physicians on his behalf;

         (2)     the Durom acetabular cup was unmerchantable in being unfit for its ordinary purposes. The Durom acetabular cup lacked something necessary for adequacy in that it failed to accomplish the purposes for which it was manufactured, or in being constructed in a manner that rendered it unreasonably dangerous.

-8-

*Producing Cause*

**8.06**        The foregoing conduct was a producing cause of Plaintiff's injuries and damages, more particularly set forth below.

*Knowing Conduct*

**8.07**        Defendant engaged in the foregoing conduct knowingly.

**8.08**        Defendant was actually aware, at the time of the above conduct, of the falsity, deception, or unfairness of such conduct.  Tex.Bus. & Comm. Code § 17.45(9).

**8.09**        Defendant was actually aware of the act, practice, condition, defect, or failure constituting the breach of warranty.  Tex.Bus. & Comm. Code § 17.45(9).

*Intentionally*

**8.10**        Defendant engaged in the foregoing conduct intentionally.

**8.11**        Defendant was actually aware of the falsity, deception, or unfairness of the above conduct, or the condition, defect, or failure constituting a breach of warranty, and specifically intended that Plaintiff, or his physicians on his behalf, act in detrimental reliance on the falsity or deception or in detrimental ignorance of the unfairness. Tex. Bus. & Comm. Code § 17.45(13).

**8.12**        Defendant acted with flagrant disregard of prudent and fair business practices to the extent that the defendant should be treated as having acted intentionally. Tex.Bus. & Comm. Code § 17.45(13).

*Application to Claims for Bodily Injury or Mental Anguish*

**8.13**        The DTPA applies to claims for bodily injury and mental anguish to the extent set forth in Section 17.50(b) and (h).  Tex. Bus. & Comm. Code § 17.49(e).

**8.14**        Section 17.50(b) of the Texas Business and Commerce Code provides, in

pertinent part, as follows:

   (b)      In a suit filed under this section, each consumer who prevails may obtain:

             (1) the amount of economic damages found by the trier of fact. If the trier of fact
             finds that the conduct of the defendant was committed knowingly, the consumer may
             also recover damages for mental anguish, as found by the trier of fact, and the trier
             of fact may award not more than three times the amount of economic damages; or if
             the trier of fact finds the conduct was committed intentionally, the consumer may
             recover damages for mental anguish, as found by the trier of fact, and the trier of fact
             may award not more than three times the amount of damages for mental anguish and
             economic damages;

Tex. Bus. & Comm. Code § 17.50(b).

   **8.15**        Thus, Plaintiff may recover:

        (1)     his economic damages;

        (2)     since Defendant acted knowingly, damages for mental anguish and three
                times the amount of economic damages;

        (3)     since Defendant acted intentionally, damages for mental anguish, three times
                the amount of economic damages, and three times the amount of damages for
                mental anguish.

Tex. Bus. & Comm. Code § 17.50(b).

   **8.16**        Section 17.45(11) of the Texas Business and Commerce Code define

economic damages as follows:

             (11) "Economic damages" means compensatory damages for pecuniary loss,
             including costs of repair and replacement. The term does not include exemplary
             damages or damages for physical pain and mental anguish, loss of consortium,
             disfigurement, physical impairment, or loss of companionship and society.

Tex. Bus. & Comm. Code § 17.45(11). Thus, Plaintiff may recover for his pecuniary loss, including

the costs of repairing or replacing the Durom acetabular cup.

**8.17**        Pecuniary loss includes money and everything that can be valued in money. *Kneip v. Unitedbank-Victoria*, 734 S.W.2d 130, 134 (Tex.App. - - Corpus Christi 1987, no writ).

**8.18**        Under Section 17.50(b), Plaintiff can also recover for mental anguish damages as well as discretionary additional damages, since Defendant engaged in the complained of conduct either knowingly or intentionally.

### Damages Applicable to All Counts

**9.01**        Plaintiff adopts by reference each and every Paragraph of the Statement of Facts Applicable to All Counts of this Petition as if fully copied and set forth at length herein.

**9.02**        Plaintiff hereby adopts by reference each and every Count of this Petition as if fully copied and set forth at length herein.

**9.03**        Plaintiff suffered sustained and incurred, and in reasonable medical probability will suffer, sustain and incur, the following injuries and damages as a producing or proximate result (or both) of Defendant's conduct, the defective Durom acetabular cup, or both, among others:

      (a)        physical pain, past and future;

      (b)        mental suffering, past and future;

      (c)        physical impairment, past and future;

      (d)        physical disfigurement, past and future;

      (e)        reasonable and necessary medical bills, past and future;

      (f)        loss of earnings/earning capacity, past and future;

      (g)        reasonable and necessary attorneys' fees;

      (h)        costs of court.

-11-

## **Punitive Damages**

As a basis for imposition of punitive damages on Defendant, Plaintiffs say:

**10.01**　　Plaintiff adopts by reference each and every Paragraph of the Statement of Facts Applicable to All Counts, Count One, Count Two, Count Three and Count Four of this Petition as if fully copied and set forth at length herein.

**10.02**　　The conduct of Defendant when viewed objectively from the standpoint of Defendant at the time of its occurrence involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

**10.03**　　Defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.

**10.05**　　The acts, omissions, or both, of Defendant that constituted gross negligence include one or more of the following, among others:

　　　　(a)　designing, manufacturing and marketing the Durom acetabular cup that is defective in that it has a high propensity of poor bone fixation to occur;

　　　　(b)　failing to warn consumers in general, and Plaintiff or his physicians specifically, of the risk that the Durom acetabular cup could become loose;

　　　　(c)　failing to adequately warn consumers in general, and Plaintiff or his physicians specifically, of the risk that the Durom acetabular cup could become loose;

　　　　(d)　failing to instruct consumers in general, and Plaintiff or his physician specifically, of how to safely use the Durom acetabular cup;

　　　　(e)　designing, manufacturing and marketing the Durom cup with circumferential fins that prevent the cup from fully seating in the acetabulum and prevent boney ingrowth from achieved.

**10.06**　　There was a high probability that the hip prostheses would become loose, resulting in a probability of serious injury.

-12-

10.07     Defendant knew of the above risk, but nevertheless proceeded with conscious indifference to the rights safety or welfare of consumers in general, and Plaintiff specifically.

### Statute of Limitations

Plaintiff first discovered less than two years before the filing of this lawsuit that the hip prostheses had become loose.  A reasonable person would not have made such discovery until such time.  Thus, the statute of limitations did not commence to running until less than two years before the filing of this lawsuit.

### Jury Demand

Plaintiffs request trial by jury.

### Prayer

Plaintiff prays that Defendant be cited to appear herein, and that upon final trial, Plaintiff have judgment against Defendants for the following, among other things:

1.    Compensatory damages in an amount above the minimum jurisdictional limits of the Court;

2.    Punitive or exemplary damages in an amount above the minimum jurisdictional limits of the Court;

3.    Pre-judgment interest according to Texas law;

4.    Post-judgment interest according to Texas law;

5.    Costs of court;

6.    Treble damages;

7.    Reasonable and necessary attorneys' fees;

8.    Such other and further relief to which Plaintiff shows himself justly entitled to receive.

-13-

Respectfully submitted,
**Houssiere, Durant & Houssiere, LLP**

By: _____
Monica C. Vaughan
State Bar No. 0079478
R. Sean Brennan
State Bar No. 24069414
1990 Post Oak Blvd., Suite 800
Houston, Texas 77056-3812
Telephone: (713)626-3700
Facsimile: (713)626-3709
Email: mvaughan@HDHtex.com

ATTORNEYS FOR PLAINTIFF

Filed 10 December 6 A10:06
Loren Jackson - District Clerk
Harris County
ED101J016082655
By: angella Dozler

CAUSE NO. 2010-46969

| | | |
|---|---|---|
| ILENE PUZIO-MALDONADO | § | IN THE DISTRICT COURT OF |
| | § | |
| V. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ZIMMER, INC., a Delaware corporation; | § | |
| ZIMMER HOLDINGS, INC., a Delaware | § | |
| corporation; and ZIMMER US, INC., | § | |
| a Delaware corporation | § | 125th JUDICIAL DISTRICT |

## PLAINTIFF'S VERIFIED MOTION TO RETAIN

Plaintiffs ask the court to retain plaintiffs' suit on the court's docket.

### A. Introduction and Facts

1.    Plaintiff is Ilene Puzio-Maldonado.

2.    Plaintiffs sued defendants for strict product liability.

3.    Citations for service upon Defendants were issued on November 16, 2010.

4.    Defendant Zimmer, US was served on November 23, 2010 and its answer is due on or before 10:00 a.m. on Monday, December 20, 2010. (See Exhibit A attached hereto).

5.    Defendants Zimmer, Inc. and Zimmer Holdings were served via the Secretary of State on November 29, 2010.

6.    On November 1, 2010, the court sent a notice of intent to dismiss due to no service/no answer being filed unless one of the following actions is taken by December 6, 2010:

      (1)    A default judgment is signed;

      (2)    All defendants have answered; or

      (3)    A verified motion to retain is filed.

7.     Further, in addition to serving the Secretary of State, Plaintiff has amended her petition and is also serving the registered agent for the Defendants Zimmer, Inc. and Zimmer Holdings in Indiana.

### B. Argument & Authorities

8.     The court should not dismiss plaintiff's suit on the docket because there is good cause to maintain it on the docket. Tex. R. Civ. P. 165a(1).

9.     The court should retain the case on the docket because the case is still within the Supreme Court's disposition time standards. Tex. R. Civ. P. 165a(2); *Polk v. Southwest Crossing Homeowners Ass'n*, 165 S.W.3d 89, 96 (Tex. App. ‑Houston [14th Dist.] 2005, pet. denied); *Johnson-Snodgrass v. KTAO, Inc.*, 75 S.W.3d 84, 87 (Tex. App.—Fort Worth 2002, pet. dism'd). The time standards are measured from the date the defendant made its appearance.

(A)    This case is a civil jury case not involving family law. Under the Supreme Court's time standards, it should be brought to trial or final disposition within 18 months. Tex. R. Jud. Admin. 6b.

10.    The court should retain the case on the docket because Plaintiff is actively prosecuting the claims.

### C. Prayer

11.    For these reasons, plaintiff asks the court to retain his suit on the docket.

Respectfully submitted,

HOUSSIERE DURANT & HOUSSIERE, L.L.P.

By:_____
       MONICA C. VAUGHAN
       State Bar No. 00794784
1990 Post Oak Blvd., Suite 800
Houston, Texas 77056-3812
Tel:(713)626-3700
Fax:(713)626-3709

ATTORNEYS FOR PLAINTIFFS

THE STATE OF TEXAS           §
                            §          **VERIFICATION**
COUNTY OF HARRIS            §


BEFORE ME, the undersigned authority, on this day personally appeared Monica C. Vaughan, who is known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he has read the foregoing Plaintiffs' Verified Motion to Retain is within her personal knowledge and it is true and correct.



_____
Monica C. Vaughan


SUBSCRIBED AND SWORN to before me by the said Monica C. Vaughan, on this the 6th  day of December, 2010.

SHIRLEY A. BLANCHARD
MY COMMISSION EXPIRES
October 21, 2014

_____
Notary Public, State of Texas



I, Loren Jackson, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date
Witness my official hand and seal of office
this _____ December 09, 2010 _____

Certified Document Number: __47125791__ (Total Pages 4)

LOREN JACKSON, DISTRICT CLERK
HARRIS COUNTY, TEXAS

In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com

Filed 10 December 6 P5:26
Loren Jackson - District Clerk
Harris County
ED101J016084173
By: bradley k. darnell

CAUSE NO. 2010-46969

| | | |
|---|---|---|
| ILENE PUZIO-MALDONADO | § | IN THE DISTRICT COURT OF |
| | § | |
| V. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ZIMMER, INC., a Delaware corporation; | § | |
| ZIMMER HOLDINGS, INC., a Delaware | § | |
| corporation; and ZIMMER US, INC., | § | |
| a Delaware corporation | § | 125th JUDICIAL DISTRICT |

### PLAINTIFF'S AMENDED VERIFIED MOTION TO RETAIN

Plaintiffs ask the court to retain plaintiffs' suit on the court's docket.

#### A. Introduction and Facts

1.    Plaintiff is Ilene Puzio-Maldonado.

2.    Plaintiffs sued defendants for strict product liability.

3.    Citations for service upon Defendants were issued on November 16, 2010.

4.    Defendant Zimmer, US was served on November 23, 2010 and its answer is due on or before 10:00 a.m. on Monday, December 20, 2010. (See Exhibit A attached hereto).

5.    Defendants Zimmer, Inc. and Zimmer Holdings were served via the Secretary of State on November 29, 2010.

6.    On November 1, 2010, the court sent a notice of intent to dismiss due to no service/no answer being filed unless one of the following actions is taken by December 6, 2010:

    (1)    A default judgment is signed;

    (2)    All defendants have answered; or

    (3)    A verified motion to retain is filed.

7. Further, in addition to serving the Secretary of State, Plaintiff has amended her petition and is also serving the registered agent for the Defendants Zimmer, Inc. and Zimmer Holdings in Indiana.

### B. Argument & Authorities

8. The court should not dismiss plaintiff's suit on the docket because there is good cause to maintain it on the docket. Tex. R. Civ. P. 165a(1).

9. The court should retain the case on the docket because the case is still within the Supreme Court's disposition time standards. Tex. R. Civ. P. 165a(2); *Polk v. Southwest Crossing Homeowners Ass'n*, 165 S.W.3d 89, 96 (Tex. App.—Houston [14th Dist.] 2005, pet. denied); *Johnson-Snodgrass v. KTAO, Inc.*, 75 S.W.3d 84, 87 (Tex. App.—Fort Worth 2002, pet. dism'd). The time standards are measured from the date the defendant made its appearance.

    (A) This case is a civil jury case not involving family law. Under the Supreme Court's time standards, it should be brought to trial or final disposition within 18 months. Tex. R. Jud. Admin. 6b.

10. The court should retain the case on the docket because Plaintiff is actively prosecuting the claims.

### C. Prayer

11. For these reasons, plaintiff asks the court to retain his suit on the docket.

Certified Document Number: 47146457 - Page 2 of 4

Respectfully submitted,

**HOUSSIERE DURANT & HOUSSIERE, L.L.P.**

By: _____
　　　　MONICA C. VAUGHAN
　　　　State Bar No. 00794784
1990 Post Oak Blvd., Suite 800
Houston, Texas 77056-3812
Tel:(713)626-3700
Fax:(713)626-3709

ATTORNEYS FOR PLAINTIFFS

THE STATE OF TEXAS            §
                             §        **VERIFICATION**
COUNTY OF HARRIS             §

    BEFORE ME, the undersigned authority, on this day personally appeared Monica C. Vaughan, who is known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he has read the foregoing Plaintiffs' Amended Verified Motion to Retain is within her personal knowledge and it is true and correct.



_____
Monica C. Vaughan

    SUBSCRIBED AND SWORN to before me by the said Monica C. Vaughan, on this the 6th  day of December, 2010.

SHIRLEY A. BLANCHARD
MY COMMISSION EXPIRES
October 21, 2014

_____
Notary Public, State of Texas

Certified Document Number: 47146457 - Page 4 of 4



I, Loren Jackson, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date
Witness my official hand and seal of office
this _____ December 09, 2010 _____

Certified Document Number: ___47146457___ (Total Pages 4)

LOREN JACKSON, DISTRICT CLERK
HARRIS COUNTY, TEXAS

In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com